UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED:    7/16/2020

MIGUEL RAMOS,

        **Plaintiffs,**

      **-against-**

**THE CITY OF NEW YORK ET AL., P.O. LENONOXAN SAMERSON,** and **P.O. "JOHN" GANDOLFI**, *in their official and individual capacity,*

        **Defendants.**

**1:18-cv-04938 (ALC)**

<u>**OPINION AND ORDER**</u>

**ANDREW L. CARTER, JR., United States District Judge:**

### INTRODUCTION

On June 7, 2019, Plaintiff Miguel Ramos filed a complaint against the City of New York and two Police Officers, Lennoxan Samerson and Frank Gandolfi, for false arrest and malicious prosecution in violation of 42 U.S.C. §1983; failure to intervene in these constitutional violations; violations of his state constitutional rights by the same arrest; and certain other claims that have since been withdrawn. Defendants moved for summary judgement as to Mr. Ramos's federal claims.

After careful consideration, Defendants' motion for summary judgment is GRANTED.

### BACKGROUND

On the morning of May 16, 2016, Lennoxan Samerson and Frank Gandolfi were working as plain clothes officers in Transit District 4 in the New York City Subway. (Defendants' Responses and Objections to Plaintiff's Statement of Facts in Opposition to Defendant's Statement

of Undisputed Facts Pursuant to Local Rule 56.1 ("Joint 56.1"), ECF No. 46, ¶¶ 1-2, 4.) The Officers began their shift on the Northbound 4, 5, 6 platform at 14th Street – Union Square at sometime between 7:30 and 9:00 am. (Joint 56.1 ¶¶ 5-7.) Mr. Ramos was on the subway that day as well.

In the course of their patrol, the Officers saw a man, who will be referred to as Suspect 1, standing suspiciously on the Northbound 6 train platform at 14th Street and leering at women's buttocks. (Joint 56.1 ¶¶ 18-19). Shortly after boarding the same train as Suspect 1, Officer Samerson saw Suspect 1 put his body square against the back of a female passenger and push his groin against her. (Joint 56.1 ¶ 20). Officer Samerson was not able to catch up with the victim to speak with her, (Joint 56.1 ¶ 22), and she and Officer Gandolfi continued to follow Suspect 1 on the train. (Joint 56.1 ¶¶ 22-23, 50-51.) The Officers followed Suspect 1 to a new car on the train, then onto the 42nd Street platform. (Joint 56.1 ¶¶ 26-31.)

For his part, Mr. Ramos denies that he crossed paths with the Officers until directly before his arrest (impliedly denying that he is Suspect 1). He points to the fact that a metrocard in his possession at the time of arrest showed an entry at the 77th Subway Station at 8:06 a.m. and at 42nd Street – Grand Central Station at 8:06 a.m. (Joint 56.1 ¶¶ 9-10.) In his view these times are inconsistent with his being Suspect 1; the Defendants disagree.

However, it is undisputed that Mr. Ramos, the Officers, and a woman, who will be referred to as A.S., boarded the same car of an Uptown 6 train at 42nd street. During the ride, A.S. felt someone touching her buttocks without consent. (Joint 56.1 ¶ 33.) Officer Samerson testified that she observed Mr. Ramos grinding his groin into the buttocks of A.S. (Joint 56.1 ¶ 34.) Mr. Ramos purports to dispute Officer Samerson's account, but, as will be discussed in greater length, fails to create a genuine dispute of fact as to her account.

2

When A.S. got off the train at the next stop, Officer Samerson followed her and asked her if anything unusual happened on the 6 train. (Joint 56.1 ¶¶ 35-36.) A.S. confirmed that someone had touched her buttocks on the train. (Joint 56.1 ¶ 37.) However, A.S. did not participate in an identification procedure to identify the person who assaulted her. (Joint 56.1 ¶ 42.)

Officer Samerson radioed to Officer Gandolfi, who had stayed on the subway with Mr. Ramos. (Joint 56.1 ¶ 38.) On the basis of Officer Samerson's radio, Officer Gandolfi arrested Mr. Ramos. (Joint 56.1 ¶ 39.)

Mr. Ramos was arraigned at New York County Criminal Court and charged with two counts of Forcible Touching and two counts of Sexual Abuse in the Third Degree, to which he plead not guilty. (Joint 56.1 ¶ 45.)

In New York, a person is guilty of Forcible Touching "when such person intentionally, and for no legitimate purpose: forcibly touches the sexual or other intimate parts of another person for the purpose of degrading or abusing such person, or for the purpose of gratifying the actor's sexual desire. . . ." N.Y. P. L. § 130.52(A)(1). A person is guilty of Sexual Abuse in the Third Degree when "he or she subjects another person to sexual contact without the latter's consent. . . ." N.Y. P. L. § 130.55.

Officer Samerson swore to the facts alleged in the criminal complaint. (Joint 56.1 ¶ 61.) On July 21, 2017, Mr. Ramos's charges were dismissed pursuant to C.P.L. §30.30 speedy trial provisions. (Joint 56.1 ¶ 46.)

On June 4, 2018, Mr. Ramos filed a complaint against Officers Samerson and Gandolfi, and the City of New York. Therein, Mr. Ramos brought claims for false arrest, excessive force and malicious prosecution in violation of 42 U.S.C. §1983; deprivation of certain rights secured

by Article 1, Section 12 of the New York Constitution; assault and battery; municipal liability by the City of New York; and failure to intervene. Plaintiff subsequently withdrew the excessive force, assault and battery and municipal liability claims. (ECF No. 34 at 2.)

On November 15, 2019, Defendants filed a motion for summary judgment arguing that (1) Plaintiff's false arrest and malicious prosecution claims fail because there was probable cause for his arrest; (2) Plaintiff cannot show the malice element of malicious prosecution; (3) Plaintiff cannot establish the favorable termination element of malicious prosecution; (4) Defendant Officers are entitled to qualified immunity, and (5) Plaintiff's failure to intervene claim fails as a matter of law. (ECF No. 39.) Defendants also argue that Plaintiff's Fair Trial claim failed. (ECF No. 39 at 17.) Because Plaintiff has disclaimed that he is advancing such a claim, (ECF No. 41 at 21), the Court will not address these arguments. Defendants also argued that were this Court to dismiss the federal claims in this matter, it should not exercise jurisdiction over the remaining state claims. (ECF No. 39 at 24.)

On December 16, 2019, Plaintiff filed an opposition, (ECF No. 41), to which Defendants responded on January 3, 2020, (ECF No. 45).

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant[s are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movants bear the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir.

2004). Where the non-movant bears the burden of proof at trial, the movants' initial burden at summary judgment can be met by pointing to a lack of evidence supporting the non-movant's claim. *Celotex Corp.*, 477 U.S. at 325. Once the movants meet their initial burden, the non-movant may defeat summary judgment only by adducing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250. The Court is to believe the evidence of the non-movants and draw all justifiable inferences in their favor, *id.* at 255, but the non-movants must still do more than merely assert conclusions that are unsupported by arguments or facts, *Bellsouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996).

## DISCUSSION

1. False Arrest

To establish a claim for false arrest under 42 U.S.C. § 1983, a plaintiff must show, *inter alia*, that "the defendant intentionally confined him without his consent and without justification." *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996). "[P]robable cause is an absolute defense to a false arrest claim." *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013).

Probable cause exists when the officers have "knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Zellner v. Summerlin,* 494 F.3d 344, 368 (2d Cir.2007). "When determining whether probable cause exists courts must consider those facts available to the officer at the time of the arrest and immediately before it, as [p]robable cause does not require absolute certainty." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir.2006) (internal quotations and citations omitted). "[I]it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge

actually invoked by the arresting officer at the time of arrest." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006).

Here, the question of probable cause turns on the accounts of Officer Samerson and A.S. Officer Samerson believes that she saw Mr. Ramos assault A.S. Defendants put forth Officer Samerson's sworn testimony and notes indicating that she witnessed Mr. Ramos assault A.S. Mr. Ramos, in turn, had to adduce evidence of specific facts that create a genuine issue as to Officer Samerson's account. The Court concludes that Mr. Ramos has not done so.

Mr. Ramos fails to demonstrate a genuine issue of fact as to whether Officer Samerson saw Mr. Ramos inappropriately touch A.S. Mr. Ramos does not, for example, offer his own sworn denial that he committed the assault. Rather, he points to an alleged inconsistency in a diagram of the incident drawn by Officer Samerson. Specifically, he argues that a triable issue arises from the fact that Officer Samerson failed to identify where on the diagram the subway door would be at a deposition years later. According to Mr. Ramos, because "Samerson was equivocal about where the platform would have been" she "could not have been watching Ramos commit the crime alleged because Ramos was on the left side of the train". (ECF No. 41 at 12.)

This attempt to create a triable issue fails. Officer Samerson testified that the purpose of the diagram was "to show where people are standing in relation to one another, that's it." (ECF No. 40-2, Samerson Dep. Tr. 65:5-9.) Consistent with her repeated sworn testimony, the diagram shows that Samerson was standing behind Mr. Ramos, who was in turn behind A.S. Officer Samerson was unwilling to label one side of the diagram as corresponding to the left or right side of the train because "it's been three years, and I didn't make the diagram of what happened in the train car". (ECF No. 40-2, Samerson Dep. Tr. 66:18-25.) But, when asked where the platform would be on her diagram, Officer Samerson testified that the "platform would have been where

everyone is by the door". (ECF No. 40-2, Samerson Dep. Tr. 66:11-16). That is consistent with her repeated sworn testimony of what she observed that day. Officer Gandolfi and A.S. were shown the same diagram, and to the degree of their knowledge, gave testimony consistent with the fact that Officer Samerson was behind Mr. Ramos who was behind A.S. (ECF No. 41 at 6-8.) This does not create a genuine issue of fact as to the reliability of Officer Samerson's account.

As to A.S.'s testimony, Mr. Ramos does not dispute that A.S. told Officer Samerson that someone touched her buttocks on the subway without consent. (Joint 56.1 ¶¶ 37, 43.) Nor has he adduced any evidence that a reasonable officer should have doubted A.S.'s account or found it to lack credibility. Rather, he attempts to cast doubt on the weight to be given A.S.'s account in two ways, both of which fail.

To the extent that Mr. Ramos argues that A.S. not recognizing the inappropriate touching to be a groin creates a material fact as to probable cause, he is wrong. A.S.'s statement confirmed that she had indeed been touched inappropriately and against her will. While what Officer Samerson saw differs from what A.S. felt happening behind her, A.S.'s statement is in no way exculpatory. Rather, she confirmed the gravamen of the charges against Mr. Ramos. *See* N.Y. P. L. § 130.52 (defining Forcible Touching as "when such person intentionally, and for no legitimate purpose, forcibly touches the sexual or other intimate parts of another person for the purpose of degrading or abusing such person; or for the purpose of gratifying the actor's sexual desire."); N.Y. P. L. § 130.55 (defining Sexual Abuse in the Third Degree as when one "subjects another person to sexual contact without the latter's consent. . . .").

Nor is Mr. Ramos's emphasis on the fact that A.S. did not identify him availing. Even without an identification from the victim, Officer Samerson's eye-witnessing of the encounter between A.S. and Mr. Ramos, and A.S.'s statement, are sufficient to support a belief that Mr.

Ramos had committed a crime. Officer Gandolfi, who effectuated the arrest, was entitled to rely on Officer Samerson's assessment. *Loria v. Gorman*, 306 F.3d 1271, 1288 (2d Cir. 2002) ("Absent significant indications to the contrary, an officer is entitled to rely on his fellow officer's determination that an arrest was lawful.") (Citing *Martinez v. Simonetti,* 202 F.3d 625, 634 (2d Cir.2000).)

Mr. Ramos argues that the question of whether he is Suspect 1 is pivotal in this analysis. "If we accept [his] version of facts that he travelled directly from 14th street to 42nd street without abusing anyone or switching train cars, Samerson must be mistaken about whom she was following." (ECF No. 41 at 9.) But, "probable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (citing *Colon v. City of New York*, 60 N.Y.2d 78, 468 N.Y.S.2d 453, 455 N.E.2d 1248 (1983)). Assuming Mr. Ramos is not Suspect 1, nothing in the record indicates that a mistake of identity by Officer Samerson was unreasonable or in bad faith. To the contrary, Officer Gandolfi testified that Suspect 1 was "wearing the same clothes, same hat, same bag" as Mr. Ramos. (ECF No. 38-2, Ganldolfi's Dep. Tr. 83:11-21.)

Based on the foregoing, the Court concludes there was probable cause for Mr. Ramos's arrest. Because "[t]here can be no federal civil rights claim for false arrest where the arresting officer had probable cause," *Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d Cir.1995) (citing *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir.1994)), Plaintiff's false arrest claim is DISMISSED. In light of this, the Court need not reach the issue of qualified immunity with respect to false arrest.

2. Malicious Prosecution

8

To state a §1983 claim for malicious prosecution, a plaintiff must show "(1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003) (citing *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir.1996)).

"[T]he existence of probable cause is a complete defense to a claim of malicious prosecution", and "indictment by a grand jury creates a presumption of probable cause." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir.2003) (citing *Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983)). That presumption may be rebutted only "by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith'". *Id.* If there was probable cause for an arrest, "[i]n order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996), as amended (May 21, 1996).

As discussed above, there was probable cause for Mr. Ramos's arrest. Given the absence of exculpatory evidence or other intervening fact to disturb that probable cause, the Court holds there was probable cause for Mr. Ramos' prosecution as well.

Therefore, Mr. Ramos's claim for malicious prosecution is DISMISSED. In light of this, the Court need not reach the favorable termination and malice elements of malicious prosecution, or qualified immunity.

3. Failure to Intervene

In light of the Court's holding that there was probable cause for the arrest and prosecution of Mr. Ramos, his claim for failure to intervene necessarily fails too. "A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988). Because the Court concludes Mr. Ramos's constitutional rights were not violated by his arrest and prosecution, there was nothing in which to intervene. This claim is therefore DISMISSED.

4. Remaining State Claims

Along with the federal claims just discussed, Mr. Ramos brought claims for violation of his rights under the New York State Constitution. Defendants did not ask this Court to evaluate the state law claims on the merits. Instead Defendants asked that, should the Court dismiss the federal claims, the Court decline to exercise jurisdiction over the remaining state claims.

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (quoting *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Seeing nothing unusual here, the Court will decline to exercise supplemental jurisdiction over the remaining state-law claims. Accordingly, Mr. Ramos's state-law claims are DISMISSED.

## CONCLUSION

The Defendants' summary judgment motion is GRANTED. The Clerk is directed to terminate the motion and to enter judgment for the Defendants.

**Dated:**        **July 16, 2020**

**New York, New York**

_____

**ANDREW L. CARTER, JR.**
**United States District Judge**